**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

MICHAEL LITTLE,

          Petitioner,

                                        Case Number: 08-CV-12794

v.

CARMEN PALMER,

          Respondent.

_____/

**OPINION AND ORDER (1) GRANTING RESPONDENT'S "MOTION TO DISMISS",**
**(2) GRANTING PETITIONER'S "MOTION FOR EXPANSION OF RECORD",**
**(3)  DENYING PETITIONER'S "MOTION AND BRIEF TO SET ASIDE MOTION TO**
**DISMISS", (4) DENYING PETITIONER'S "MOTION TO SUPPLEMENT OR AMEND**
**PETITION FOR WRIT OF HABEAS CORPUS", AND (5) DECLINING TO ISSUE A**
**CERTIFICATE OF APPEALABILITY**

      Petitioner Michael Little, a state inmate currently incarcerated at the Michigan

Reformatory in Ionia, Michigan, has filed a *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his

constitutional rights.  Respondent did not file an answer but instead filed a motion to

dismiss, arguing that Petitioner's petition was not timely filed under 28 U.S.C.

§ 2244(d)(1).  Petitioner filed a "Motion and Brief to Set Aside Motion to Dismiss," which

the court construes as a motion for equitable tolling.

      In that pleading, Petitioner argues that the court should invoke the doctrine of

equitable tolling because he is actually innocent.  Petitioner submitted four un-notarized

affidavits to support his claim.  Petitioner has also filed two other motions: a "Motion for

Expansion of Record" and a "Motion To Supplement Or Amend Petition For Writ Of

Habeas Corpus."

For the reasons stated below, the court grants Petitioner's "Motion for Expansion of Record" and grants Respondent's motion to dismiss, thereby dismissing Petitioner's petition for writ of habeas corpus.  The court also denies Petitioner's "Motion and Brief To Set Aside Motion To Dismiss" and his "Motion To Supplement Or Amend Petition For Writ Of Habeas Corpus" as moot.  The court declines to issue Petitioner a certificate of appealability and an application for leave to proceed on appeal *in forma pauperis*.

## I.  BACKGROUND

This case arises as a result of an incident that occurred in the early morning hours of June 12, 1996, in Ypsilanti, Michigan.  The complainant, Erica Brooks, testified that, while she was sleeping in bed, she was awakened by a noise and then felt something hit her in the head.  According to Ms. Brooks, a man put a gun to her head and demanded money.  She testified that he then ordered her to lie down on the bed and remove her clothing.

Ms. Brooks stated that her perpetrator then removed his clothing, except for a bandana which he kept over his face, and forced her to have sexual intercourse with him; he told her to "either put it in or I'd die."  (Trial Tr. vol. II, p. 51, Dec. 16, 1997.)  He stopped after a few moments and then ordered her to perform fellatio on him, while pointing his gun down at her.  Subsequently, he ordered her to get on top of him and again engaged in sexual intercourse.  Following, he inserted a coke bottle, with the cap still on it, into her vagina and rectum.  He then told her that if she did not stop crying he would shoot her.  He then removed the coke bottle from her vagina and inserted the gun.  Again, the complainant was ordered to perform fellatio on him but she could not because she was crying.  Ms. Brooks's perpetrator then penetrated her vagina and

2

anus multiple times with his penis, with his fingers and with his fist.  He then ejaculated on her bed.

Ms. Brooks testified that after her attacker left, she was taken to the hospital. According to her, she recognized his voice as that of a friend of her brother. She also testified that her perpetrator knew the names of her brothers and sisters and that she saw his face.

Petitioner gave a statement to the police after he was arrested.

Officer Connie Koski, from the Ypsilanti Police Department, testified that she dusted Ms. Brooks's apartment and objects for fingerprints, and that none of those recovered were identified as Petitioner's.

Two different DNA tests were run on the evidentiary samples taken from the Brooks apartment.  Heather Spillage, from the Michigan State Police Department, testified that she found insufficient DNA on the rectal swab to match the sperm portion with that of Petitioner but did find a pattern consistent with that of Petitioner's on the genital swab.

Megan Clement, an expert from the Laboratory Corporation of America, which was selected by Petitioner, conducted an analysis on the vaginal swab, rectal swab, tissue paper and blood samples taken from Petitioner, Ms. Brooks, and Ms. Brooks's boyfriend.  Ms. Clement was able to identify a profile from the vaginal sample that was consistent with that of Petitioner's.

Following a five-day jury trial in Washtenaw County Circuit Court, on December 19, 1997, Petitioner was convicted of seven counts of first-degree criminal sexual

conduct[1] and first-degree home invasion[2].  He was sentenced to concurrent terms of

ten- to twenty-years imprisonment for the home-invasion conviction and forty- to sixty-

years imprisonment for each first-degree criminal sexual conduct conviction.

      Following his sentencing, Petitioner filed an appeal as of right with the Michigan

Court of Appeals, challenging his convictions and sentences on the following grounds:

> I.      The complainant's testimony, if accepted as true,
> would have supported nine separate and distinct
> convictions of first[-]degree criminal sexual conduct.
> The jury was confused about the factual basis of
> [Petitioner's] guilt.  Did the jury instructions that were
> given deprive [Petitioner's] right to a unanimous jury
> verdict?
>
> II.     The trial court held that "being called a punk" and
> "people getting in [Petitioner's] face" did not rise to the
> level of coercion and that his claims that his statement
> was involuntary were "purely subjective." Was this
> finding erroneous?
>
> III.    After his arrest, [Petitioner] gave a statement to police
> that he was somewhere else during the alleged
> offense and gave police the name of a witness who
> would testify as to where he was during that time
> period.  Trial counsel did not adequately investigate,
> prepare or assert an alibi defense.  Did [Petitioner]
> receive ineffective assistance of counsel such that he
> is entitled to a new trial?
>
> IV.    The cumulative effect of the errors at [Petitioner's] trial
> were so prejudicial as to deny him a fair trial.
>
> V.     Do [Petitioner's] sentences violate the principle of

---

[1] Mich. Comp. Laws § 750.520B.

[2]  Mich. Comp. Laws § 750.110A2.

*People v. Milbourn*?[3]

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences on March 21, 2000.  *People v. Little*, No. 210564, 2000 WL 33522092 (Mich. Ct. App. Mar. 21, 2000).  Subsequently, Petitioner filed an application for leave to appeal from that decision with the Michigan Supreme Court, raising the same claims as raised in the court of appeals.  The Michigan Supreme Court denied Petitioner's application on October 30, 2000.  *People v. Little*, 618 N.W.2d 912 (Mich. 2000).

Then, on January 7, 2005, over four years later, Petitioner filed a motion for relief from judgment pursuant to M.C.R. 6.500 *et. seq.*, in the Washtenaw County Circuit Court, raising the following claims:

> I.      This Court must vacate [Petitioner's] convictions for first[-]degree criminal sexual conduct and first degree home invasion because the prosecution failed to produce sufficient evidence.
>
> II.     *Blakely v. Washington*[4] provides the [Petitioner] with "good cause" to entitle the [Petitioner] to re-sentencing because the Court exceeded the proper sentencing guidelines range based on the facts not found beyond a reasonable doubt.

On August 24, 2005, the trial court denied Petitioner's motion for relief from judgment.  *People v. Little*, No. 96-006409-FC (Washtenaw County Circuit Court, Aug. 24, 2005).

One year later, on August 15, 2006, Petitioner filed a delayed application for leave to appeal from that decision with the Michigan Court of Appeals.  On April 20,

---

[3]*People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990).

[4]*Blakely v. Washington*, 542 U.S. 296 (2004).

5

2007, the court of appeals dismissed Petitioner's delayed application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Little*, No. 272387 (Mich. Ct. App. Apr. 20, 2007).

Petitioner subsequently filed an application for leave to appeal with the Michigan Supreme Court.  On September 10, 2007, the Michigan Supreme Court denied Petitioner's application "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Little*, 737 N.W.2d 753 (Mich. 2007).

On June 30, 2008, Petitioner filed his petition for a writ of habeas corpus, which he signed on June 24, 2008.  In his pleadings, Petitioner raises claims of instructional error, insufficiency of the evidence, an involuntary statement, improper sentencing, and ineffective assistance of counsel.

## II.  STANDARD

In his motion to dismiss, Respondent argues that Petitioner's petition should be dismissed as untimely.  The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA" or "the Act") applies to all habeas petitions filed after the Act's effective date, April 24, 1996, and imposes a one-year limitations period for habeas corpus petitions.  28 U.S.C. § 2244(d)(1).  Petitioner's application for habeas corpus relief was filed after April 24, 1996, and thus the provisions of the AEDPA, including the limitations period for filing an application for habeas corpus relief, apply to Petitioner's application.  *Lindh v. Murphy*, 521 U.S. 320, 337 (1997).  Title 28 of the United States Code, sections 2244(d)(1)(A) through (D) state in pertinent part:

6

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was originally recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Concerning § 2244(d)(1)(A) and a direct appeal from state court, the one-year statute of limitations does not begin to run until the day after the petition for a writ of certiorari was due in the United States Supreme Court.  *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).  Under Rule 13 of the Supreme Court Rules, a petition for a writ of certiorari "is timely when it is filed with the Clerk of this Court within 90 days after entry of judgment."  Sup. Ct. R. 13.

Under § 2244(d)(2), the time during which a properly filed application for state post-conviction or other collateral review, with respect to the pertinent judgment or claim, is pending tolls any period of limitation contained in the statute.  A petition for post-conviction relief is "properly filed" under the statute if it meets the applicable state rules governing filing.  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  However, tolling is only effective when collateral review is properly sought within the limitations period.  *Id.*

7

Concerning a petition for state post-conviction relief, the one-year statute of limitations is tolled during the time period between the state appellate court's decision and the state supreme court's decision concerning the petition. *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Matthews v. Abramajtys*, 319 F.3d 780, 787-88 (6th Cir. 2003). However, a properly filed application for state post-conviction relief, while tolling the statute of limitations, does not start a new limitations period. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

### III.  DISCUSSION

### A.  Timeliness of Petition

In this case, Petitioner did not file his application for a writ of habeas corpus within the statute of limitations period.  Petitioner's application for leave to appeal to the Michigan Supreme Court was denied on October 30, 2000.  Petitioner then had ninety days from that order, or until January 29, 2001, in which to seek a writ of certiorari with the United States Supreme Court.  Sup. Ct. R. 13.  Thus, for statute of limitations purposes, Petitioner's conviction became final on or about January 29, 2001.  The limitations period commenced the following day, January 30, 2001, and continued to run uninterrupted until it expired on January 30, 2002.  Accordingly, Petitioner was required to file his habeas petition on or before January 30, 2002, excluding any time during which a properly filed application for state post-conviction or collateral review was pending in accordance with 28 U.S.C. § 2244 (d)(2).

Petitioner did in fact file a post-conviction motion in state court seeking relief from judgment on January 7, 2005, almost three years after the limitations period for his habeas relief expired.  The filing of that motion did not toll the statute of limitations

8

period because there was no limitations period to toll.

Petitioner signed his application for writ of habeas corpus on June 24, 2008, and it was filed with this court on June 30, 2008, more than six years after the expiration of the one-year statute of limitations. Hence, Petitioner is barred from habeas relief by the untimely filing of his petition. However, Petitioner argues that the court should invoke the doctrine of equitable tolling in his case because he is actually innocent.

### B. Equitable Tolling

The United States Supreme Court has not yet decided whether the statute of limitations for habeas actions is subject to equitable tolling. *Pace v. DeGuglielmo*, 544 U.S. 408, 418 n.8 (2005). However, most circuits, including the United States Court of Appeals for the Sixth Circuit, have determined that the one-year limitations period can be subject to equitable tolling. *See Griffin v. Rogers*, 308 F.3d 647, 652 (6th Cir. 2002). The applicability of equitable tolling on grounds of actual innocence is likewise undecided by the Supreme Court but recognized by the Sixth Circuit. *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005). Although the Supreme Court has not considered the question of equitable tolling in habeas cases, it has determined that, if equitable tolling is available in habeas challenges to state-court convictions, a litigant must show (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way. *Pace*, 544 U.S. at 418.

In *Dunlap v. United States*, 250 F.3d 1001, 1008-09 (6th Cir. 2001), the Sixth Circuit held that the test to determine whether equitable tolling of the habeas limitations period is appropriate is the five-factor analysis set forth in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988). The factors which the Court is to consider are:

9

> (1) the petitioner's lack of notice of the filing requirement; (2)
> the petitioner's lack of constructive knowledge of the filing
> requirement; (3) diligence in pursuing one's rights; (4)
> absence of prejudice to the respondent; and (5) the
> petitioner's reasonableness in remaining ignorant of the legal
> requirement for filing his claim.

*Dunlap*, 250 F.3d at 1008.  "[T]hese factors 'are not necessarily comprehensive or always relevant; ultimately every court must consider an equitable tolling claim on a case-by-case basis.'"  *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005) (quoting *King v. Bell*, 378 F.3d 550, 553 (6th Cir.2004)).  "In essence, the doctrine of equitable tolling allows federal courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'"  *Keenan*, 400 F.3d at 421 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir.2000)); *see Pace*, 544 U.S. at 418.  Equitable tolling should be granted only "sparingly."  *Keenan*, 400 F.3d at 420 ("Equitable tolling is permissible under the [AEDPA], although rare.") (citation omitted).  A petitioner has the burden of demonstrating that he is entitled to equitable tolling.  *Griffin*, 308 F.3d at 653.

Ignorance of the law, illiteracy, and lack of legal assistance do not amount to grounds for equitable tolling.  *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling."); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (Inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations).

The Sixth Circuit has recently held that a credible claim of actual innocence may

10

equitably toll the one-year statute of limitations set forth at 28 U.S.C. § 2244(d)(1). *Souter*, 395 F.3d at 588-90. As the *Souter* Court explained, where a petitioner, in order to support a claim of actual innocence in a collateral proceeding, "can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims." *Souter,* 395 F.3d at 602. A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner asserts that he is entitled to equitable tolling because he is actually innocent. In support of this argument, Petitioner submits a motion to expand the record and attaches four un-notarized statements in the form of affidavits. Petitioner provides no argument or legal authority for the court to consider the affidavits in their current form.[5] But even if the court were to consider the statements, the information contained within is unconvincing. These statements, created and signed some twelve years after the night in question, attempt to establish that Petitioner was attending a party at a different house (also located in Ypsilanti and also occupied by a woman named Brooks)

---

[5] Because the court did review the statements in considering the petition, though, the court will grant Petitioner's motion to the extent he seeks the court to review the content of them.

11

until, approximately 3:00 a.m. to 4:00 a.m. the morning that the crime occurred.  But the statements, of somewhat dubious credibility,[6] in no way *conclusively* establish that Petitioner could not have committed the crime sometime after he was seen at the other Brooks house yet still during "early morning hours," as was alleged at trial.[7]  At best, the statements accuse Petitioner's trial counsel of choosing to not follow up with certain potential witnesses.  The court cannot conclude the statements present a valid claim of actual innocence based on "new reliable evidence."  *Schlup*, 513 U.S. at 324.

Therefore, Petitioner does not provide the type of evidence from which the court might conclude it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, *Souter,* 395 F.3d at 602, and therefore Petitioner is not entitled to equitable tolling.  Having failed to establish entitlement to either statutory or equitable tolling, Petitioner's petition is dismissed as untimely.

### C. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal

---

[6] For example, all appear to be printed in the same manner, and all use a number of nearly identical and distinctive phrases, e.g., "over Michelle".  Viz: Freddie Little statement describes three people who "came over Michelle house;" the Jimmy Whitfield statement explains that the next morning Petitioner was "still over Michelle house;" the Jahmelia Washington statement says that "I was over Michelle Brooks family gettogether." "Over" could be merely an example of an expression so common as to be nearly universal (although the court doubts any likelihood of that), but the statements overall have such similarities as to give the appearance of having been prepared by the same person. In addition, the court observes the glaring logical inconsistency found in the statements' description of at least Whitfield and Petitioner conversing with a police officer who "came through" the house during the party shortly before midnight, while the same statements describe Petitioner the very next afternoon jumping out of a moving car to run behind a house at the mere *sight* of a police car by the side of the road.

[7] Indeed, the victim described the events as having begun about 4:15 a.m., a time after which no person brought forward by Petitioner claims to have seen him.

12

the denial of a habeas petition for relief from either a state or federal conviction. 28

U.S.C. §§ 2253(c)(1)(A), (B). A district court, in its discretion, may decide whether to

issue a COA at the time the court rules on a petition for a writ of habeas corpus or may

wait until a notice of appeal is filed to make such a determination. *See Castro v. United*

*States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d

1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521

U.S. 320 (1997). In denying the habeas petition, the court has studied the case record

and the relevant law, and concludes that, as a result, it is presently in the best position

to decide whether to issue a COA. *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105

F.3d at 1072 ("[Because] 'a district judge who has just denied a habeas petition . . . will

have an intimate knowledge of both the record and the relevant law,'" the district judge

is, at that point, often best able to determine whether to issue the COA.)).

A court may issue a COA "only if the applicant has made a substantial showing

of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w]

that reasonable jurists could debate whether (or, for that matter, agree that) the petition

should have been resolved in a different manner or that the issues presented were

'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S.

473, 484 (2000). In this case, the court concludes that reasonable jurists would not

debate that Petitioner's petition is untimely and that he is not entitled to equitable tolling.

Therefore, the court will deny a certificate of appealability.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Respondent's "Motion to Dismiss for the

Failure to Comply with the One-Year Statute of Limitations" [Dkt. # 8] is GRANTED, and

13

Petitioner's "Application for Writ of Habeas Corpus 28 U.S.C. § 2254" [Dkt. # 1] is

DISMISSED with prejudice.

IT IS FURTHER ORDERED that Petitioner's "Motion for Expansion of Record"

[Dkt. # 14] is GRANTED.

IT IS FURTHER ORDERED that Petitioner's "Motion and Brief to Set Aside

Motion to Dismiss" [Dkt. # 15] and his "Motion to Supplement or Amend Petition for Writ

of Habeas Corpus" [Dkt. # 10] are DENIED.

Finally, IT IS ORDERED that the court DECLINES to issue Petitioner a certificate

of appealability.

                      S/Robert H. Cleland
                      ROBERT H. CLELAND
                      UNITED STATES DISTRICT JUDGE

Dated:  March 31, 2009
I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, March 31, 2009, by electronic and/or ordinary mail.

                      S/Lisa Wagner
                      Case Manager and Deputy Clerk
                      (313) 234-5522